UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ADRON LATTLMANE FLOYD,

        Defendant.
_____/

Case No. 1:22-cr-20586

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTIONS TO SENTENCING RECOMMENDATION**

Defendant Adron Floyd is currently awaiting sentencing after pleading guilty to possessing controlled substances with the intent to distribute. In July 2025, the Probation Department filed a final presentence investigation report calculating Defendant's recommended sentence based on his status as a career offender. In a subsequent sentencing memorandum, Defendant objected to this designation and separately argued that he was subjected to sentencing entrapment. As explained below, Defendant's objections lack merit.

**I.**

In February 2025, Defendant Adron Lattlmane Floyd pleaded guilty to possessing controlled substances with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). *See* ECF Nos. 32 at PageID.89; 30; 34. Defendant is currently scheduled to be sentenced on August 28, 2025. *See* ECF No. 44. In advance of his hearing, the Probation Department filed Defendant's final presentence investigation report (PSR). ECF No. 40 (sealed).

The PSR describes Defendant's offense conduct as follows:

On October 19, 2022, a [Mid-Michigan Investigative Narcotics Team (MINT)] detective was advised by a Confidential Source (CS) that he/she could purchase a quarter pound of methamphetamine, an eight ball of heroin, and some cocaine base from "DK," later identified by detectives as [Defendant] who resided in Grand

Rapids, Michigan. The CS and [Defendant] agreed to set up a purchase of methamphetamine, heroin, and cocaine base for $1,800.00 in Mount Pleasant, Michigan. [Defendant] contacted the CS and told the CS to meet him in the parking lot of the Soaring Eagle Casino in Mount Pleasant Michigan. [Defendant] provided the CS with details of his exact location within the parking lot.

The CS entered a 2019 . . . SUV that [Defendant] was driving[,] provided [Defendant] with $1,800.00 in pre-recorded buy funds[,] and [Defendant] provided the CS with individual baggies that contained the following narcotics: 4.3 grams of fentanyl; 114.5 grams of methamphetamine; and 3.0 grams of cocaine base. After the transaction, the CS advised detectives that there was also an unidentified female in the passenger seat who did not participate in the transaction. The CS advised detectives that he/she believed [Defendant] had additional amounts of heroin and cocaine in his possession.

After the above controlled purchase, an officer with the Saginaw Chippewa Tribal Police Department initiated a traffic stop of the defendant's vehicle as it entered the parking lot of a nearby convenience store. The vehicle briefly stopped before it accelerated, cut through a nearby yard and fled the scene with the officer in pursuit. During the pursuit, other units assisted in attempting to pull the vehicle over without success. [Defendant] was described as driving recklessly through traffic by weaving in and out of traffic, driving into oncoming traffic and traveling around 125 MPH as he continued to drive into Midland (Michigan) County. A supporting unit also observed a bag being thrown from the vehicle and noted the location. A marked patrol unit ahead of the defendant's vehicle attempted to throw a spike strip; however, the defendant turned into the yard of a residence before the vehicle stopped. [Defendant] exited the vehicle and fled on foot into a wooded area. . . .

A search of the area where officers observed a bag being thrown from the defendant's vehicle during the pursuit resulted in the seizure of the following field tested narcotics: 30.00 grams of cocaine base; 43.9 grams of heroin/fentanyl; and 24.3 grams of methamphetamine.

A search of [Defendant]'s vehicle resulted in the seizure of the following field tested narcotics on the floor near the driver's seat: 5.2 grams of methamphetamine; and 0.4 grams of cocaine base. Officers seized a rental car agreement in [Defendant]'s name from within the car. . . .

The passenger, Kiarra Nichole Harrison, was interviewed by detectives and identified [Defendant] as the driver of the vehicle. Harrison advised she had known [Defendant] for about three months. She stated she would hang out with [Defendant]in Grand Rapids . . . and the two would smoke marijuana together. Harrison said she was picked up by [Defendant] at her residence before he told her, "I have to go handle some business" but denied knowing what [Defendant] meant by this. Once they arrived at the Casino parking lot, Harrison advised that [Defendant] gave an individual drugs in exchange for money. She noted

> [Defendant] obtained the drugs from a sandwich bag under his seat. Harrison said she believed [Defendant] had more drugs in the car because she observed him throw items out of the window of the vehicle while he fled from law enforcement. Harrison said [Defendant] told her law enforcement was "going to have to catch him." She advised she told [Defendant] several times that she wanted to be let out of the vehicle before he eventually stopped.

PSR ¶¶ 14-19; *accord* ECF No. 32 at PageID.91.

Using the Sentencing Guidelines' Drug Conversion Table, the PSR calculates that Defendant possessed, with intent to distribute, a total of 527.77 kg of converted drugs. *Id.* ¶ 24 (citing U.S.S.G. § 2D1.1, Application Note 8). Considering this converted drug weight, Defendant's base offense level is 26. *Id.* ¶ 30 (citing U.S.S.G. § 2D1.1(c)(7)). But Probation recommends sentencing Defendant as a career offender under § 4B1.1 in light of his controlled-substance criminal history. *Id.* ¶ 36, 52 (citing U.S.S.G. § 4B1.1(b)(3)).

Defendant's controlled-substance criminal history has spanned 30 years. In 1998, when he was 21 years old, Defendant was convicted in state court of possessing cocaine base. *Id.* ¶ 41. Months later, in February 1999, Defendant was convicted in state court of possessing less than 50 grams of cocaine base with the intent to distribute. *See id.* ¶ 42. Seven years later, in 2006, Defendant was convicted in state court of possessing less than 25 grams of cocaine. *Id.* ¶ 44. Nine years after that, in October 2015, Defendant was convicted in state court of delivering/manufacturing less than 50 grams of "cocaine, heroin, or another narcotic." *Id.* ¶ 47. And he was convicted of this offense again just one year later, after law enforcement recovered $2,000 in cash and 3.43 grams of cocaine base that Defendant dropped from his pockets while fleeing from police after a traffic stop. *Id.* ¶ 48.

Considering Defendant's recommended career-offender status, Defendant's total offense level was 29,[1] and he was placed in criminal history category VI. *Id.* ¶¶ 39; 52. Accordingly, Defendant's advisory Guidelines range is 151–188 months of imprisonment.[2] ¶ 87.

The Parties filed their respective sentencing memorandums in July 2025. ECF Nos. 42; 43; 45. Defendant raises two objections to the PSR's sentencing recommendation. Each will be addressed in turn.

## II.

First, Defendant maintains that he is *not* a career offender because some of his state-controlled-substance convictions do not classify as predicate offenses under U.S.S.G. § 4B1.1. ECF No. 42 at PageID.222. As explained below, Defendant's argument lacks merit.

### A.

The Guidelines designate a defendant as a career offender if (1) the defendant was at least 18 years old at the time of the instant offense; (2) the instant offense is "a felony that is either a crime of violence or a controlled substance offense"; and (3) "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Defendant does not dispute that he was 18 at the time of the instant offense, nor that the instant offense is properly defined as one involving controlled substances. *See* ECF No. 42. He instead challenges the predicate-offense prong and argues that his state criminal history does not include at least two qualifying "controlled substance convictions." *Id.* at PageID.221–22.

---

[1] Defendant's career offender enhancement results in a 32-point offense level. PSR ¶ 36 (citing U.S.S.G. § 4B1.1(b)(3)). But Probation recommends a three-point reduction for Defendant's acceptance of responsibility. *Id.* ¶¶ 37–38.

[2] Without the § 4B1.1 career offender enhancement, Defendant's prison sentence would seemingly fall within the Guidelines range of 100-125 months. *Compare* PSR ¶¶ 35, 27–38, 51 *with* U.S. SENT'G GUIDELINES MANUAL ch. 5, pt. A (U.S. SENT'G COMM'N 2024).

"To decide whether a state drug crime qualifies as a 'controlled substance offense,'" courts apply a "categorical approach" and assess "the generic elements of a state drug crime." *Id.* at 1244. The facts underlying the state convictions are irrelevant. *See id.* Instead, "[i]f a hypothetical defendant could have committed" the state crime through "*any* conduct that would not satisfy [U.S.S.G.] § 4B1.2's federal definition of 'controlled substance offense,' the state crime categorically falls outside the federal definition." *Id.* "In other words, the categorical approach requires [courts] to identify the 'least culpable conduct' that the state drug crime covers and ask whether this conduct meets § 4B1.2's definition of 'controlled substance offense.'"

So how does § 4B1.2 define "controlled substance offenses?" Cyclically. Indeed, the Guidelines define a controlled substance offense as any federal or state offense, punishable by more than a year in prison, that prohibits the manufacture, import, export, or distribution,—or possession with an intent to manufacture, import, export, or distribute—any "controlled substance" or "counterfeit substance." U.S.S.G. § 4B1.2(b). "The Guidelines do not specify what constitutes a 'controlled substance,' however, they 'draw their definitions from the Controlled Substances Act.'" *United States v. Lofton*, No. 20-20221, 2021 WL 5494782, at *1 (E.D. Mich. Nov. 23, 2021) (quoting *United States v. Jackson*, 995 F.3d 476, 480 (6th Cir. 2021)). A substance is thus "controlled" if it is listed on any federal schedule. 21 U.S.C. § 802(6).

### B.

Against this legal backdrop, the Government does not dispute that Defendant's 1998 and 2006 state court convictions for simple possession *do not* classify as "controlled substance" offenses for the purposes of the career-offender enhancement because neither conviction involves the requisite intent. *See* ECF Nos. 43; 45. And Defendant does not dispute that his 1999 conviction for possession with intent to deliver less than 50 grams of cocaine *does* classify as a career-offender

predicate. *See* ECF No. 42. But Defendant argues his two most recent possession-with-intent-to-distribute convictions in 2015 and 2016 are improper predicate offenses because, at the time of these state convictions, Michigan outlawed [$^{123}$I]ioflupane ("Ioflupane"), but the federal government did not. *Id.* at PageID.221–22. Defendant's argument misses the mark.

Ioflupane "is a radioactive cocaine derivative that is used in a radiopharmaceutical called 'DaTscan' in hospital brain scans to detect Parkinson's disease." *United States v. Taylor*, No. 20-CR-20449, 2022 WL 3447596, at *4 (E.D. Mich. Aug. 17, 2022); *accord* ECF Nos. 43-2 at PageID.244, 247 (noting Ioflupane "produce[s] behavioral effects" that mimic cocaine); 42 at PageID.222. In September 2015—before Defendant's most recent state-court convictions—Ioflupane was expressly removed from the federal controlled substance schedules. *Taylor*, 2022 WL 3447596, at *4 (21 C.F.R. § 1308.12(b)(4)(ii)).

But Michigan did not follow suit. So, Defendant points to the absence of an express state Ioflupane exemption and argues, under the categorical approach, that the "least culpable conduct" he could have committed to warrant his October 2015 and 2016 convictions is possessing Ioflupane with an intent to distribute it.[3] ECF No. 42 at PageID.222 (citing *Drake*, 126 F.4th at 1244). Not so. True, Michigan's controlled substance schedules do not *expressly* exempt

---

[3] Notably, the categorical approach has been criticized as a way in which defendants can "play[] pretend," and point to "imaginary" facts in attempt to reduce their sentence. *United States v. Clark*, 46 F.4th 404, 415 (6th Cir. 2022) (Thapar, J., concurring); *see also Mathi, v. United States*, 579 U.S. 500, 538, 543 (2016) (Alito, J., dissenting) (noting a categorical approach "calls for sentencing judges to delve into pointless abstract questions" and ignores "real-world facts" in favor of fictitious ones). This criticism is sound. In this case, nothing suggests Defendant was ever convicted for possessing or distributing Ioflupane. Indeed, the very nature of Ioflupane suggests it is entirely incapable of being possessed or distributed. *See supra* Section II.B. Yet, under the categorical approach, we all must pretend that Defendant possessed Ioflupane. The undersigned shares the "hope [that], before long, Congress and the Sentencing Commission will eliminate the categorical approach and bring us all back to reality." *Clark*, 46 F.4th at 416 (Thapar, J., concurring).

Ioflupane. *See* MICH. COMP. LAWS §§ 333.7212–7220. But at least two other provisions of Michigan's Public Health Code do.

First, since 2000, Michigan has exempted from its controlled-substance schedules any substance available in "a proportion or concentration" that "vitiate[s] the potential for abuse." MICH. COMP. LAWS § 333.7227(1). Ioflupane is properly exempted under this statute because it cannot be abused as a recreational drug. *Id.* § 333.7227(1). It is only available in small amounts "by a highly technical and complex synthetic route which requires specialized equipment." ECF No. 43-2 at PageID.241. It is nuclear—its radioactive nature results in daily decay that prevents meaningful recreational distribution. *Id.* at PageID.239. Regardless, one would need to receive 6,0000 injections of DaTscan—the only known source of Ioflupane—to ingest enough of the substance to mimic the effects of cocaine. *Id.* And it is "impossible" to otherwise extract Ioflupane from the DaTscan injection. *Id.* at PageID.244. Because these properties "vitiate the potential for" Ioflupane "abuse," the substance was exempt under Michigan law and thus decontrolled at the time of Defendant's 2015 and 2016 convictions. MICH. COMP. LAWS § 333.7227(1); *see also United States v. Taylor*, No. 20-CR-20449, 2022 WL 3447596, at *7 (E.D. Mich. Aug. 17, 2022).[4]

---

[4] *Taylor* held that there was no "realistic probability" that the defendant could have been prosecuted under Michigan's controlled substance statutes for the possession of Ioflupane. But this reasoning was erroneous. The Sixth Circuit has rejected the realistic probability test in circumstances like this, when the elements of a state crime are unambiguously defined by statutory provisions. *See United States v. Cervenak*, 135 F.4th 311, 327 (6th Cir. 2025) (noting the "realistic probability" test applies when "the dispute [is] about how far the elements of the state offense stretch[]," not what the "elements themselves" are). Indeed, the Sixth Circuit expressly rejected the "realistic probability" test in a case concerning Michigan law and Ioflupane. *United States v. Wilkes*, 133 F.4th 600, 603 n. 3 (6th Cir. 2025) ("The question is solely whether the statute under which the defendant was convicted in state court covered only conduct that would be criminalized under the relevant federal laws. Thus, it does not matter whether there was a reasonable probability that [the defendant's] alleged predicate convictions were based on [I]oflupane. Even if an examination of the state court record demonstrated that they were not, that fact would not answer the pertinent question under the categorical approach."). To be clear, this Court is not applying nor endorsing the "realistic probability" approach erroneous applied in *Taylor*. This Court is not

Second, since 1978, Michigan has exempted any "compound, mixture, or preparation" that is exempted under "federal regulations . . . and which is restricted by law to dispensing on prescription." Mich. Comp. Laws § 333.7229. This section exempts Ioflupane, too. As Defendant concedes, Ioflupane was exempt under federal regulations beginning in September 2015—before his October 2015 and 2016 state convictions. *See* ECF No. 42 at PageID.222. And the only source of Ioflupane—the DaTscan injection—is "manufactured to order based on physician[] prescriptions." ECF No. 43-2 at PageID.240.

So, contrary to Defendant's contention, possessing Ioflupane with an intent to distribute is not the "least culpable" conduct he could have committed and still been convicted for possessing a controlled substance with an intent to distribute under Michigan law. Simply stated, Ioflupane was *not* a controlled substance under either Michigan or federal law at the time of Defendant's 2015 and 2016 state convictions. *See, e.g.*, *United States v. Hinds*, No. 2:18-CR-295333 (E.D. Mich. Sep. 15, 2022) (rejecting defendant's argument that ioflupane distribution was the least culpable conduct he could have committed under state law because "[t]he Michigan and Federal definitions are categorically the same"); *United States v. Wilson*, No. 2:19-CR-20549 (E.D. Mich. May 31, 2024) (citing Mich. Comp. Laws § 333.7229 and explaining "[b]ecause [I]oflupane is exempt under federal law and is available by prescription, it is also exempt in Michigan").

At bottom, Defendant's 2015 and 2016 state-controlled-substance convictions are proper career-offender predicates. So his objection to the contrary will be overruled.

---

holding, for example, that it is *unlikely* Defendant was convicted of possessing Ioflupane with an intent to distribute. This Court is instead holding—consistent with the factually devoid categorical approach—that Ioflupane categorically could not have been the "least culpable" substance Defendant distributed, because at least two Michigan statutory provisions exempted it from the state's controlled-substance schedules.

### III.

Defendant next objects that he has been subjected to "sentencing entrapment." ECF No. 42 at PageID.223. He has not, for a few reasons. For starters, the Sixth Circuit "does not recognize" the doctrine. *United States v. Guest*, 564 F.3d 777, 781 (6th Cir. 2009). It "never [has]." *United States v. Dottery*, 353 F. Supp. 2d 894, 897 (E.D. Mich. 2005).

Second, even if the Sixth Circuit recognized sentencing entrapment, it does not apply here. As recognized in other Circuits, a defendant must show (1)"outrageous[] government conduct" which induced the defendant to commit the instant offense and (2) that, absent this outrageous conduct, the defendant "lacked the predisposition" to do so. *United States v. Hammadi*, 737 F.3d 1043, 1048 (6th Cir. 2013) (citing *United States v. Parrilla*, 114 F.3d 124, 127 (9th Cir. 1997)). Defendant has not satisfied this burden. Instead, he argues that he has historically possessed and trafficked lesser quantities of drugs, so had the Government not employed a confidential source, he would not have distributed a large amount of drugs here. ECF No. 42 at PageID.223–24. But this does not show he lacked the predisposition to distribute drugs in the first instance. Indeed, he identifies his historic disposition to do so and, in the very next sentence, Defendant admits that he distributed the purported "larger" amount of drugs here precisely because "he could not refuse" the large profits he would receive. *Id.* Moreover, using a confidential source is hardly "outrageous" conduct, and Defendant has not even attempted to argue that it is. *See id.*

### IV.

Accordingly, it is **ORDERED** that Defendant's Objections to the Presentence Investigation Report's Sentencing Recommendation, *see* ECF No. 42, are **OVERRULED.**

Dated: August 6, 2025                                            s/Thomas L. Ludington
                                                                 THOMAS L. LUDINGTON
                                                                 United States District Judge